IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| WILLIE E. WILLIAMS, B63167, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| WILLIAM A. SPILLER, | ) |
| JOSHUA A. SCHOENBECK, | ) |
| JASON N. HART, | )   Case No. 22-cv-756-DWD |
| ANTHONY WILLS, | ) |
| SARAH JOHNSON, | ) |
| ROB JEFFREYS. | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**DUGAN, District Judge:**

Plaintiff Willie E. Williams, an inmate of the Illinois Department of Corrections (IDOC) currently incarcerated at Lawrence Correctional Center, brings this civil rights action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights at Menard Correctional Center (Menard) (Doc. 1). Plaintiff claims that he was sentenced to segregation without due process. He requests declaratory relief and compensatory damages.

Plaintiff's Complaint (Doc. 1) is now before the Court for preliminary review pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a)-(b). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is

immune from such relief must be dismissed. 28 U.S.C. § 1915A(b). At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

## The Complaint

Plaintiff alleges the following: On July 23, 2020, two unknown officers woke Plaintiff up and moved him to a cell in segregation.[1] Eventually, Plaintiff learned that Menard officials believed he was the leader of the Gangster Disciples at Menard. Officials indicated that, because of recent gang related violence in the East Cell House, officials wanted to meet with Plaintiff and other gang leaders. Plaintiff informed officials that he was no longer a member of the Gangster Disciples, but he would be willing to help facilitate a peaceful resolution to the gang related violence.

On July 27, 2002, Plaintiff was served with a disciplinary report written by William A. Spiller, a Lieutenant with internal affairs. The report alleged that Plaintiff was the highest-ranking leader of the Gangster Disciples at Menard. After reviewing the report, Plaintiff requested to call two witnesses at his disciplinary hearing, and that request was written on the disciplinary report.

On July 30, 2020, an unknown officer told Plaintiff it was time for his disciplinary hearing. The officer, however, could not open Plaintiff's cell and had to contact a locksmith. The locksmith was able to open Plaintiff's cell, but Plaintiff was not taken to

---

[1] Plaintiff provides additional details regarding his initial transfer to segregation, the conditions of his segregation cell at Menard while he was waiting for a hearing, and the unknown officers' failure to address those conditions. Plaintiff, however, states that this information is intended to provide complete and accurate facts, and that he is not attempting to bring claims against the unknown parties. The allegations pertaining to the unknown officers are therefore not necessary for purposes of screening and will not be further addressed in this order.

his disciplinary hearing. Instead, he was strip searched and transferred to Illinois River Correctional Center.[2] Upon arriving at Illinois River Correctional Center, Plaintiff was placed in a segregation cell where he remained for 45 days.

After a few weeks, Plaintiff obtained a copy of his disciplinary hearing report. The report falsely stated that Plaintiff refused to attend the hearing. In addition, no witnesses were called on Plaintiff's behalf. The disciplinary committee, chaired by Joshua A. Schoenbeck and Jason N. Hart, adjudicated Plaintiff guilty based on a report from internal affairs. Plaintiff was disciplined with six months in segregation, demotion to c-grade for six months, six months commissary restriction, and six months contact restrictions.

Except for the commissary and contact restrictions, Anthony Wills, Menard's Warden, concurred with the committee's recommendations. Plaintiff submitted a grievance regarding the disciplinary hearing and his punishment. On February 22, 2021, Sarah Johnson, the chairperson of the Administrative Review Board, denied Plaintiff's grievance as moot based on representations made by the adjustment committee. IDOC's director, Rob Jeffreys, concurred in the denial.[3]

Although Plaintiff was disciplined with six months in segregation, it is unclear how long he remained there. The Complaint indicates that Plaintiff's disciplinary

[2] The Complaint alleges that because of the way he was handcuffed during transport, he experienced pain and tingling in his wrists, fingers, and hands for several months. The pain was eventually treated by medical staff. Plaintiff does not associate these allegations with any particular individual and does not appear to be bringing a claim as to this incident.
[3] Plaintiff also contends that Spiller and Schoenbeck conspired to find him guilty on a false disciplinary report in 2019. These facts, however, appear to be intended as background information and are insufficient to state an independent claim.

restrictions and time in segregation were reduced due to good behavior. Additionally, when describing the conditions of his confinement, Plaintiff states as follows:

> Plaintiff was labeled [a] "circuit rider" and an "extreme security risk" which resulted in Plaintiff being housed alone on a wing for approximately 45 days having to be chained/shackled [by a chain with attached handcuffs that were wrapped around his waste and pad locked with ankle cuffs also attached to the chain] during any movement out of cell, including showers, having to recreate alone, and being treated as a threat to others.

(Doc. 1, p. 21).

### Discussion

Based on the allegations of the Complaint, the Court designates the following count:

**Count 1:**    Fourteenth Amendment due process claim against Defendants for punishing Plaintiff with segregation without due process.

The parties and the Court will use this designation in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the** *Twombly*[4] **pleading standard.**

For a prison disciplinary hearing to satisfy due process requirements, the inmate must be provided: (1) written notice of the charge against the prisoner 24 hours prior to the hearing; (2) the right to appear in person before an impartial body; (3) the right to call witnesses and to present physical/documentary evidence, but only when doing so will

---

[4] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (7th Cir. 2007).

not unduly jeopardize the safety of the institution or correctional goals; and (4) a written statement of the reasons for the action taken against the prisoner. *Wolff v. McDonnell*, 418 U.S. 539, 563-69 (1974). *See also Black v. Lane*, 22 F.3d 1395, 1402 (7th Cir. 1994) (disciplinary decision must be supported by "some evidence"); *Cain v. Lane*, 857 F.2d 1139, 1145 (7th Cir. 1988). However, in order to pursue a due process claim for punishment resulting from a flawed disciplinary proceeding, a prisoner must show that he was deprived of a constitutionally protected liberty interest. *See Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 697-98 (7th Cir. 2009).

A demotion to C-grade and loss of commissary and contact visit privileges do not amount to a deprivation of a protected liberty interest. *See, e.g.*, *Thomas v. Ramos*, 130 F.3d 754, 762 n.8 (7th Cir. 1997) (collecting cases). As for disciplinary segregation, an inmate has a due process liberty interest in being in the general prison population only if the conditions of his or her disciplinary confinement impose "atypical and significant hardship[s] … in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995); *see also Wagner v. Hanks*, 128 F.3d 1173, 1175 (7th Cir. 1997) (in light of *Sandin*, "the right to litigate disciplinary confinements has become vanishingly small").

To determine whether a term of disciplinary segregation imposed an atypical and significant hardship, courts look at both the duration of segregation and the conditions faced by the prisoner in segregation. *Marion*, 559 F.3d at 697-98. If the segregation term is relatively short, no inquiry into specific conditions of confinement is necessary. *See Lekas v. Briley*, 405 F.3d 602, 612 (7th Cir. 2005) (56 days); *Thomas v. Ramos*, 130 F.3d 754, 761 (7th Cir. 1997) (70 days) ("a relatively short period when one considers his 12 year prison

sentence"). The *Marion* court observed that six months in segregation "is not such an extreme term and, standing alone, would not trigger due process rights." *Marion*, 559 F.3d at 698; *see also Hardaway v. Meyerhoff*, 734 F.3d 740, 744 (7th Cir. 2013) (finding conditions of confinement in 6-month segregation term did not amount to an atypical and significant hardship).

Here, it appears that Plaintiff was punished with six months in disciplinary segregation. That duration alone does not rise to the level of a deprivation of a liberty interest, particularly in the context of Plaintiff's 21-year sentence.[5] A six-month period in punitive segregation may constitute a deprivation of liberty if the conditions of that confinement presented an atypical and significant hardship when compared to the conditions prevailing in nondisciplinary segregation, such as investigative or administrative segregation. *Sandin*, 515 U.S. at 484; *Wagner*, 128 F.3d at 1175; *Marion*, 559 F.3d at 697-98. Plaintiff's Complaint discloses very little about the conditions of his confinement in segregation, and it is not clear how long he actually spent in segregation. The conditions that he does describe (being restrained for any movement outside of his cell, having to recreate alone, and being treated as a threat to others for 45 days) fall short of showing an atypical and significant hardship. Accordingly, even assuming that Defendants failed to afford Plaintiff the procedural due process protections set forth in *Wolff*, Plaintiff fails to state a due process claim upon which relief may be granted.

---

[5] Plaintiff's sentencing information was found on the website of the Illinois Department of Corrections, Individuals in Custody Search page, http://www2.illinois.gov/idoc/Offender/Pages/InmateSearch.aspx (last visited May 13, 2022). *See Bova v. U.S. Bank, N.A.*, 446 F. Supp. 2d 926, 930 n.2 (S.D. Ill. 2006) (a court may judicially notice public records available on government websites) (collecting cases). The subject website indicates that Plaintiff is serving two 21-year sentences for aggravated criminal sexual assault with a weapon and a six-year sentence for criminal sexual assault with force. His projected release date is 3 years to life.

Accordingly, the Complaint will be dismissed without prejudice. Plaintiff will be given the opportunity to re-plead this claim in an amended complaint if he believes that facts exist to show that the duration of his disciplinary segregation and its conditions imposed an atypical and significant hardship on him.

## Pending Motions

Plaintiff filed a motion for recruitment of counsel at the time he filed his case. (Doc. 2). In his motion, Plaintiff requests the assistance of counsel because he believes it will be difficult to adequately litigate his case while he is incarcerated. The Court understands his point, but at this early stage the Plaintiff is doing a fine job representing himself. His complaint is clear and organized, and his motion indicates that he has some college education. *See Pruitt v. Mote*, 503 F.3d 647, 655 (7th Cir. 2007) (the decision to appoint counsel depends on the difficulty of the case and plaintiff's competency to represent him or herself). The case is not yet at a level of complexity that requires assistance. If the Plaintiff runs into problems litigating his case as things progress, he may renew his request for counsel at a later time. For now, Plaintiff's motion for counsel will be **DENIED** without prejudice.

## Disposition

Plaintiff is **DIRECTED** to file a First Amended Complaint within 30 days of this Order. To assist him with preparing an amended complaint, the Clerk of Court is directed to mail Plaintiff a copy of the standard civil rights complaint form along with this Order. If Plaintiff fails to file an amended complaint, his case may be dismissed for failure to state a claim or failure to prosecute.

Plaintiff's Motion for Counsel (Doc. 2) is **DENIED** without prejudice.

**IT IS SO ORDERED.**

Dated: May 16, 2022

/s *David W. Dugan*

_____
DAVID W. DUGAN
United States District Judge