IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| WILLIE WILLIAMS, #B63167, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 22-cv-756-RJD |
| ) | |
| WILLIAM SPILLER, *et al.*, ) | |
| ) | |
| Defendants. ) | |

**ORDER**

**DALY, Magistrate Judge:**

This matter comes before the Court on Defendant Rob Jeffreys' Motion for Summary Judgment on the Issue of Exhaustion of Administrative Remedies (the "Motion") (Doc. 45). On August 8, 2024, this Court entered its Order, granting the Motion for Summary Judgment as to Claim 2 of the Second Amended Complaint and setting this matter for an evidentiary hearing as to Claim 3. (Doc. 52). On August 19, 2024, the Court held the evidentiary hearing. For the reasons set forth below, the Motion is hereby **GRANTED** as to Claim 3 of the Second Amended Complaint, and Defendant Rob Jeffreys is **DISMISSED** without prejudice.

**Background**

Plaintiff Willie Williams, an inmate of the Illinois Department of Corrections (IDOC), brought this civil rights action on April 19, 2022, pursuant to 42 U.S.C. § 1983, alleging deprivations of his constitutional rights at Menard and Illinois River Correctional Centers (Menard/Illinois River).[1] (Doc. 17). Following a preliminary review of the Second Amended

---

[1] Plaintiff has since been transferred to Danville Correctional Center (Doc. 26).

Complaint pursuant to 28 U.S.C. § 1915A, Plaintiff was allowed to proceed on the following claims:

> Claim 2: Fourteenth Amendment Due Process claim against Defendants Schoenbeck, Hart, and Jeffreys for Plaintiff's disciplinary proceedings.
>
> Claim 3: Eighth Amendment deliberate indifference claim against Rob Jeffreys for the conditions of Plaintiff's placement in solitary or segregated confinement at Illinois River based on his status as a "circuit rider" or security risk.

(Doc. 20).[2]

Specifically, in Claim 3, Plaintiff alleged that, on July 30, 2020, he was transferred to Illinois River. He was placed in a cell on an empty wing. He did not have his property, which was quarantined for 14 days due to his transfer, though he was provided with hygiene supplies. (Doc. 17 at 14). He alleged that he spent 45 days at Illinois River in solitary confinement because he was labeled as a "circuit rider" and an "extreme security risk." During this time, he had virtually no human contact, he was not allowed to recreate outside, and he was escorted to appointments in elevated restraints. The restraints caused wrist and hand pain, and he was treated with pain medication on multiple occasions. He further alleged that "the 'circuit rider' status demanded that the administration and staff at Illinois River couldn't make any decisions regarding Plaintiff unless approved by IDOC's executive administrators (directors)." (Doc. 17 at 14). After 45 days in solitary confinement, Plaintiff was transferred to a different area of the prison, where he was housed near long-term segregation offenders with serious mental illnesses. (Doc. 17 at 15). His fellow inmates were "continuously yelling, banging on doors, flooding cells, attempting suicide,

---

[2] In his Second Amended Complaint Plaintiff had asserted three claims against several defendants. After a preliminary review of the Second Amended Complaint, Claim 1 was dismissed in its entirety, and Claim 2 was dismissed as to Defendants Spiller, Wills and Johnson. Because there were no remaining claims against Defendants John Does 1-3, Spiller, Wills, or Johnson, those parties were terminated. (Doc. 20).

playing with human excrement and causing officers to spray mace." (*Id.*). He further stated that "[q]uite often [he] was deprived of sleep, had to clean toilet water flowing into the cell from floods. [He] used volume of television to try to drown out noise and [he] remained in cell quiet without ever speaking to other inmates. As a result, [he] often had headaches from the loud volume of the television and vomited more than he ever had in life from the smells of feces and mace." (Doc. 17 at 15).

*Defendant Jeffreys' Motion for Summary Judgment on the Issue of Exhaustion of Administrative Remedies (Doc. 45)*

Defendant Jeffreys filed this pending motion seeking summary judgment on the issue of exhaustion of administrative remedies on Claims 2 and 3. Pursuant to this Court's Order (Doc. 52), the motion was granted as to Claim 2 but was set for an evidentiary hearing as to Claim 3. On August 19, 2024, the Court held the evidentiary hearing.

Regarding Claim 3, Jeffreys argues in the Motion that Plaintiff has failed to exhaust his administrative remedies because he did not file any grievance directly grieving the conditions of his confinement. (Doc. 45 at 5-6). In his response, Plaintiff does not dispute that his ARB record and Cumulative Counseling Summary do not contain a grievance regarding the conditions of confinement in segregation while at Illinois River. (Doc. 47 at 7-8). He argues, however, that he submitted one relevant grievance, to which he never received a response. (*Id.*). He further states that at all relevant times at Illinois River, the facility was under COVID-19 protocols, and the assigned staff at the Law Library did not respond to Plaintiff's written requests to visit him at the Restricted Housing Unit. (*Id.*). He wrote a grievance pertaining to his "circuit rider" and "extreme security risk" status and attempted to submit it without making a copy. (*Id.*). He sealed the grievance in a white envelope addressed to "Grievance Dept.," then placed the grievance in the

door of the cell to be collected by the security staff, but he never received a response to his grievance. (*Id.*). He claims that he filed the complaint more than a year after submitting the unanswered grievance, and thus, he should be deemed to have satisfied the exhaustion requirement. (*Id.*).

At the hearing, Plaintiff testified that he was transferred to Illinois River in July 2020. Due to his "circuit rider" status, Plaintiff was housed in the R6 housing unit, which is separated from the general population. Plaintiff explained that, unlike the general population, inmates in the R6 housing unit did not have direct access to the grievance box. Rather, a correctional officer would circulate the locked grievance box in the R6 housing unit and allow inmates to drop their grievances in the box. According to Plaintiff, the correctional officers were supposed to circulate the locked grievance box daily, but, in practice, there were days that the grievance box was not circulated. Plaintiff testified that, on those days, the inmates were placing their grievances in "the crack" of their cell's door. Plaintiff explained that that was the process inmates had to follow for institutional mail and for grievances addressed directly to the ARB. He clarified that he was never instructed by the institution to place the grievance in the door on the days that the grievance box was not circulated. He assumed, however, that by doing so, the officers would separate the grievance and put it in the grievance box as opposed to putting it in the regular mail.

Plaintiff testified that at some time in August or September of 2020, while he was housed in R6 housing unit, he wrote a grievance questioning "the legitimacy of his 'circuit rider' status" and not receiving a hearing prior to being placed in that status. Plaintiff did not mention Jeffreys in the grievance but generally referenced IDOC's administrative staff. He requested to be taken off the "circuit rider" status. Plaintiff placed the grievance in an envelope and then put the envelope in "the crack of the door." He did not recall the grievance officer picking up the grievance

from the door.  However, the following day, the envelope was not in the door crack.  He assumed that the correctional officer had picked up the envelope and put it in the grievance box.  Plaintiff never received a response to the grievance.

During the relevant time, Plaintiff had opportunities to talk to his counselor on a weekly basis.  He did not have a recollection of discussing with his counselor the issue of his grievance not being answered, but he testified he was "sure" he did.  Plaintiff did not take any other steps to follow up on the grievance.  He did not file another grievance to complain regarding that same matter or for not receiving a response to the grievance.  Plaintiff further stated that he did not maintain a copy of the grievance.  He explained that at the relevant time, there were COVID-19 protocols in place that restricted the inmates' access to law librarians.  He asked to speak to someone from the law library to make copies of his grievance, but nobody responded to him.  He testified that he was, thus, "forced" to submit his grievance without retaining a copy.

The Court also heard the testimony of Defendant's witness, Melissa Johnson, who at all relevant times was a casework supervisor at Illinois River, responsible for processing inmates' grievances.  Johnson testified that inmates in R6 housing unit had to place their grievances inside a locked grievance box that was only accessible by grievance staff and that was being circulated within the unit almost daily.  Once the grievances were picked up, the grievance staff would note in a log the date and the number of grievances they collected, then print and sign their names to the grievances they picked up on that date.  The officers would make a record even on the days when zero grievances were deposited in the box.

Johnson clarified that if an inmate put a grievance directed to the grievance office through the mail system, the grievance was sent back to the individual with instructions to resubmit it in the grievance box.  Johnson testified that all submitted grievances were listed in the Plaintiff's

Page **5** of **15**

Cumulative Counseling Summary as well as in the grievance log that grievance officers maintain. Based on Johnson's testimony, the log shows that from July 30, 2020, through December 15, 2020, the time Plaintiff was in the custody of Illinois River, the grievance officers collected a total of 193 grievances from the R6 housing unit, while there were a few days where the officers did not collect any grievances (*e.g.*, August 4-7, 13-14, 19).

Johnson confirmed, and Plaintiff did not dispute, that his Cumulative Counseling Summary does not show any relevant grievance being submitted while being housed at R6 Housing Unit.[3] Further, Plaintiff's Cumulative Counseling Summary suggests that Plaintiff did communicate with a correctional counselor during the relevant timeframe and discussed several issues, including grade cuts and other caseload matters. However, there is no indication that Plaintiff discussed not having received a response to a filed grievance. There is further no indication that Plaintiff had any communication with a grievance counselor during the relevant timeframe. Johnson explained that any communication with a counselor regarding this matter would have been reflected in Plaintiff's Cumulative Counseling Summary.

Based on this testimony, Defendant Jeffreys argued that Plaintiff failed to exhaust his administrative remedies regarding Claim 3 because he did not properly file and exhaust a grievance regarding his conditions of confinement while in restricted housing at Illinois River. Additionally, Jeffreys argued that Plaintiff failed to take any steps to follow up on the alleged missing grievance and that, in any case, the alleged missing grievance did not exhaust Plaintiff's administrative remedies because it did not sufficiently identify Jeffreys. Plaintiff countered that he made every

---

[3] The only grievance documented between August and September of 2020, is a grievance that Plaintiff sent directly to the ARB. Plaintiff did not dispute that this grievance did not relate to his Eighth Amendment claim, but rather to his Fourteenth Amendment due process claim regarding his disciplinary report dated July 27, 2020.

effort to properly file his grievance and that once the grievance was placed in his door, there was nothing more that he could do to trigger a response.

## Legal Standards

*Summary Judgment Standard*

Summary judgment is appropriate only if the moving party can demonstrate "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Celotex Corp. v. Catlett*, 477 U.S. 317, 322(1986).  The moving party bears the initial burden of demonstrating the lack of any genuine issue of material fact.  *Celotex*, 477 U.S. at 323.  Once a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).  A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Estate of Simpson v. Gorbett*, 863 F.3d 740, 745 (7th Cir. 2017) (quoting *Anderson*, 477 U.S. at 248).  In considering a summary judgment motion, the district court views the facts in the light most favorable to and draws all reasonable inferences in favor of the nonmoving party.  *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted).  While courts generally may not resolve factual disputes on a motion for summary judgment, when the motion pertains to a prisoner's exhaustion of administrative remedies, "the Seventh Circuit has instructed courts to conduct an evidentiary hearing and resolve contested issues of fact regarding a prisoner's efforts to exhaust." *Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008); *Roberts v. Neal, 745 F. 3d 232,* 236 (7th Cir. 2014).

*Exhaustion Requirement*

Pursuant to 42 U.S.C. § 1997e(a), prisoners are required to exhaust available administrative remedies prior to filing lawsuits in federal court.  "[A] prisoner who does not properly take each step within the administrative process has failed to exhaust state remedies." *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002).  "[A] suit filed by a prisoner before administrative remedies have been exhausted must be dismissed; the district court lacks discretion to resolve the claim on the merits, even if the prisoner exhausts intra-prison remedies before judgment." *Perez v. Wisconsin Dep't of Corr.*, 182 F.3d 532, 535 (7th Cir. 1999).  "[A]ll dismissals under § 1997e(a) should be without prejudice." *Ford v. Johnson*, 362 F.3d 395, 401 (7th Cir. 2004).

An inmate in the custody of the Illinois Department of Corrections must first submit a written grievance within 60 days after the discovery of the incident, occurrence, or problem to his or her institutional counselor unless certain discrete issues are being grieved.  20 ILL. ADMIN. CODE § 504.810(a).  If the complaint is not resolved through a counselor, the grievance is considered by a Grievance Officer who must render a written recommendation to the Chief Administrative Officer — usually the Warden — within two months of receipt, "when reasonably feasible under the circumstances." *Id*. §504.830(e).  The CAO then advises the inmate of a decision on the grievance. *Id.*

An inmate may appeal the decision of the Chief Administrative Officer in writing within 30 days to the Administrative Review Board for a final decision. *Id.* §_504.850(a); *see also Dole v. Chandler*, 438 F.3d 804, 806–07 (7th Cir. 2006).  The ARB will submit a written report of its findings and recommendations to the Director, who shall review the same and make a final determination within six months of receipt of the appeal.  20 ILL. ADMIN. CODE § 504.850(d) and (e).

An inmate may request that a grievance be handled as an emergency by forwarding it directly to the Chief Administrative Officer. *Id.* § 504.840. If it is determined that there exists a substantial risk of imminent personal injury or other serious or irreparable harm, the grievance is handled on an emergency basis, which allows for expedited processing of the grievance by responding directly to the offender. *Id.* Inmates may further submit certain types of grievances directly to the Administrative Review Board, including grievances related to protective custody, psychotropic medication, and certain issues relating to facilities other than the inmate's currently assigned facility. *Id.* at § 504.870.

While the Seventh Circuit requires strict adherence to the exhaustion requirement, an inmate is required to exhaust only those administrative remedies that are available to him, meaning procedures they are "capable of use to obtain some relief for the action complained of." *Wallace v. Baldwin*, 55 F.4th 535, 542 (7th Cir. 2022) (quoting *Ross v. Blake*, 578 U.S. 632, 643, 136 S.Ct. 1850, 195 L.Ed.2d 117 (2016)) (internal quotation marks omitted). The Supreme Court has recognized three categories of practically unavailable administrative remedies. *Id.* First, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use. In this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." *Id.* (citing *Ross*, 578 U.S. at 643–44, 136 S.Ct. 1850). Second administrative remedies are unavailable "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* Finally, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* Administrative remedies also become "unavailable" when prison officials "do not respond to a properly filed grievance or otherwise use affirmative

misconduct to prevent a prisoner from exhausting." *Dole*, 438 F.3d at 809. The Seventh Circuit has cautioned, however, that the "unavailable" exception is meant to be narrow. *Wallace*, 55 F.4th at 543.

## Discussion

Based on the record, the Court finds that Plaintiff failed to exhaust his administrative remedies regarding Claim 3, and Defendant Jeffreys is entitled to summary judgment as a matter of law. First, it is not disputed that the missing grievance is not included in the grievance log, Plaintiff's Cumulative Counseling Summary, or any other record in which the institution documents inmates' grievances. Even assuming Plaintiff's testimony regarding the filing of the missing grievance is credible, the Court finds that Plaintiff has still failed to exhaust his administrative remedies because Plaintiff did not comply with IDOC's grievance process when he filed the missing grievance. Plaintiff placed the missing grievance in the crack of his cell door instead of putting it in the grievance box as required. Plaintiff improperly assumed that by placing the grievance in his cell door, the officer would pick it up and put it in the grievance box. However, Plaintiff knew at the time that the normal procedure for filing his grievance was to deposit it in the grievance box. Plaintiff testified he was never instructed by the institution that if the grievance box was not being circulated on a certain day, Plaintiff could just place it in his door along with his institutional mail.

In *Curtis v. Timberlake*, 436 F.3d 709, the Seventh Circuit dealt with a similar issue. 436 F.3d 709, 710-11 (7th Cir. 2005). There, Curtis, a pretrial detainee, argued that he gave a grievance to a jail social worker, but he never received a response to the grievance or to any of the inquiries he made over the next several months. *Id.* The defendants argued that Curtis had failed to exhaust his administrative remedies because the only appropriate method for filing his grievance was to

deposit it in a lockbox provided for that purpose. *Id.* The defendants also submitted an affidavit of the social worker who had allegedly accepted Curtis' grievance. *Id.* The affidavit stated that she could not find a record of this particular grievance and did not recall receiving it. *Id.* She added, however, that she had "received several request slips and grievances" from Curtis "on previous occasions," and that if Curtis had given her a grievance after this incident, she would have followed her standard practice of noting it in a master tracking log, assigning a control number, and returning a copy with the control number to Curtis. *Id.* Moreover, the social worker did not deny that she would accept hand-delivered grievances from inmates rather than insisting on use of the lockbox. *Id.* The Seventh Circuit reversed the district court's grant of summary judgment in favor of the defendants, finding that "whether he exhausted his administrative remedies [was] a question that turn[ed] on disputed issues of material fact," that the evidence at summary judgment support[ed] a finding that the written procedures providing for use of a lockbox [were] not exclusive, and that handing grievances to a social worker [was] also an accepted means of submitting a grievance. *Id.*

Unlike in *Curtis*, however, here, the record does not support a finding of a generally accepted practice to process grievances that were placed in the cell's door instead of the lockbox. Johnson testified that, with the exception of grievances directed to the ARB, the only appropriate process for filing a grievance was depositing it in the designated lockbox. She further testified that any grievance improperly placed through the institutional mail would be returned to the inmates with instructions to submit it to the grievance box.

Plaintiff's testimony about the normal practice between segregation inmates in Illinois River is not persuasive. Plaintiff was moved to Illinois River on July 30, 2020, and he testified that he wrote his grievance in August or September while being in segregation. Given the limited

time that Plaintiff was in Illinois River at the time he allegedly wrote the missing grievance and the fact that during that time, he was in segregation, it is questionable how Plaintiff became acquainted with the inmates' normal practice at the facility for submitting grievances on days when the grievance box was not circulated within the housing unit.  This is especially true in light of his testimony that he was aware he was required to submit the grievance to the lockbox and that he was never instructed by the institution to place the grievance in his cell door.  Plaintiff's subjective perception of a generally accepted practice in Illinois River was not based on his own experience because he did not file any other grievance directed to the grievance office while at R6 housing unit.  Further, Plaintiff did not testify that he was aware of other segregation inmates at Illinois River who had successfully followed that procedure.  In other words, Plaintiff's testimony regarding the normal procedure for segregation inmates at Illinois River did not sufficiently establish that officials there had accepted an alternative procedure for submitting grievances directed to the grievance office.  Accordingly, the Court finds that placing the grievance in an envelope in the crack of his cell door was not in compliance with the administrative procedures at Illinois River at the relevant time.

Further, Plaintiff's claim that placing the grievance in the crack of his cell door was the only option available to him because the grievance box was not circulated every single day is unpersuasive.  This argument echoes the argument the inmate plaintiff raised in *Dole*, the landmark case discussing the unavailability of administrative remedies under the PLRA when a grievance goes unanswered.  *Dole,* 438 F.3d at 809.  There, the administrative remedies were deemed unavailable when an inmate received no response from the Administrative Review Board after he put his grievance in an envelope and "placed the envelope in the 'chuckhole' of his cell for the guard to pick up and mail."  *Id.* at 807.  Unlike Defendant in this current case, however, the

defendants in *Dole* had conceded that submitting a grievance for mailing to the ARB "was the only procedure that was available to [the inmate]." *Id*. The reason was that the grievance counselor had instructed the plaintiff that his grievance needed to be submitted directly to the ARB since it grieved an incident that had occurred at a different correctional center. *Id.*

Unlike the plaintiff in *Dole*, in the instant case, Plaintiff's placement of the grievance in his cell door was not the only procedure available to him. Plaintiff testified that his grievance was directed to the grievance office—not to the ARB, and therefore was not supposed to be sent through the institutional mail. Even assuming the grievance box was not circulated on the day Plaintiff prepared his grievance, Plaintiff could have kept the grievance in his cell and waited until the next time that the grievance box would be circulated. This is especially true in light of Johnson's testimony that grievances were being collected at his housing unit during the relevant timeframe on a regular basis, even if not daily. Plaintiff did not provide any explanation as to why he could not wait a few days for the grievance box to be circulated within his housing unit. Accordingly, this case is distinguishable from *Dole*. Because the Seventh Circuit has cautioned that the unavailability exception is meant to be narrow, the Court cannot find that the administrative remedies were unavailable to Plaintiff because he did not receive a response to a grievance that he did not file in compliance with the institution's procedures.

Finally, even assuming placing the grievance in the crack of his cell's door was the normal procedure for filing a grievance, Plaintiff's testimony regarding the content of the missing grievance shows that it did not contain information sufficient to alert the institution of his Eighth Amendment claim of deliberate indifference against Jeffreys regarding the conditions of confinement at Illinois River. In his response to the motion for summary judgment, Plaintiff stated that he "wrote up a grievance for his conditions at Illinois river and submitted the grievance for

collection by security staff." (Doc. 47 at 4). Later on, however, in the response, Plaintiff stated that missing grievance related to his "circuit rider" and "extreme security risk" status, which he attempted to submit through the Internal Grievance Procedure. (Doc. 47 at 7). At the hearing, Plaintiff testified that in the missing grievance, he complained about the legitimacy of his placement under a "circuit rider" status and the fact that he did not receive a hearing. He did not make any suggestion that he grieved the conditions of his confinement at Illinois River. He further testified that he did not name or identify Defendant Jeffreys therein, but he rather referred generally to the administration. Based on the Plaintiff's own testimony, the content of the missing grievance appears to relate to Plaintiff's Fourteenth Amendment claim (Claim 2 of the Second Amended Complaint)—not his Eighth Amendment claim (Claim 3 of the Second Amended Complaint) for conditions of confinement at Illinois River.

Accordingly, the Court concludes that Plaintiff did not exhaust available remedies as to Claim 3, and Defendant Jeffreys is entitled to judgment as a matter of law.

## Conclusion

For the foregoing reasons, Defendant Jeffreys' Motion for Summary Judgment on the Issue of Exhaustion of Administrative Remedies (Doc. 45) is **GRANTED** as to Claim 3 of the Second Amended Complaint. Because there are no claims remaining against him, Defendant Rob Jeffreys is **DISMISSED** without prejudice. The Clerk of Court is **DIRECTED** to **TERMINATE** Defendant Rob Jeffreys.

**IT IS SO ORDERED.**

**DATED: August 27, 2024**

*s/ Reona J. Daly*
**Hon. Reona J. Daly**
**United States Magistrate Judge**
