IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| WILLIE WILLIAMS, #B63167, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 22-cv-756-RJD |
| ) | |
| JOSHUA A. SCHOENBECK and ) | |
| JASON N. HART, ) | |
| ) | |
| Defendants. | |

**ORDER**

**DALY, Magistrate Judge:**[1]

This matter comes before the Court on the parties' various motions. For the reasons set forth below, Plaintiff's Motion for Order Compelling Discovery (Doc. 65) is **GRANTED in part and DENIED in part**. Plaintiff's Motion to Appoint Counsel (Doc. 67) and Defendants' Motion for Summary Judgment (Doc. 71) are **DENIED**. Defendants are granted an extension of time up to **February 5, 2026**, to respond to Plaintiff's Motion to Compel (Doc. 64).

**Background**

Plaintiff Willie Williams, an inmate of the Illinois Department of Corrections (IDOC), brought this civil rights action on April 19, 2022, pursuant to 42 U.S.C. § 1983, alleging deprivations of his constitutional rights at Menard and Illinois River Correctional Centers (Menard/Illinois River).[2] (Doc. 17). Following a preliminary review of the Second Amended

---

[1] This case has been assigned to the undersigned to conduct all proceedings, including trial and final entry of judgment upon the parties' full consent pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. (Doc. 35).

[2] Plaintiff has since been transferred to Danville Correctional Center (Doc. 26).

Complaint pursuant to 28 U.S.C. § 1915A, and a motion for summary judgment on the issue of exhaustion of administrative remedies, Plaintiff is now proceeding on a Fourteenth Amendment Due Process claim against Defendants Schoenbeck and Hart for Plaintiff's disciplinary proceedings (Count 2 of the Second Amended Complaint). (*See* Docs. 17 & 56).

Plaintiff alleged that on February 27, 2019, Defendant Spiller wrote him a false disciplinary report related to his involvement in gang activities. (Doc. 17 at 7). On March 5, 2019, Defendant Schoenbeck and the Adjustment Committee held a hearing on the ticket. Plaintiff pled not guilty, but the disciplinary committee found him guilty of the offense and assessed three months in segregation and restrictions on privileges. (Doc. 17 at 7). On July 27, 2020, while in segregation, Plaintiff was served a disciplinary report that alleged he was the highest-ranking member of a gang at Menard. The officer who presented the report recorded Plaintiff's intention to present witnesses. (Doc.17 at 12). On July 30, John Doe 1 came to get Plaintiff for his disciplinary hearing, but his door was jammed. Plaintiff alleged that it took a short time for a locksmith to arrive to open the door. By the time the door was open, John Doe 1 informed him that he should pack his property instead, as he was being moved. A different officer informed him that they knew nothing about the Adjustment Committee.

Plaintiff alleged that, on that same day, he was transferred to Illinois River without attending the hearing. He alleged that he spent 45 days at Illinois River in solitary confinement because he was labeled as a "circuit rider" and an "extreme security risk." After inquiring for three weeks, an officer gave him a copy of the Adjustment Committee findings from Menard, which found him guilty based on evidence that he alleged was fabricated. The findings stated that he refused to attend the hearing at Menard. (Doc. 17 at 15). Defendants Schoenbeck and Hart had sentenced him to six months in segregation and restricted privileges. (Doc. 17 at 15). Defendant

Wills approved the committee findings. Plaintiff grieved the Adjustment Committee's findings to the ARB. Specifically, he claimed that the Adjustment Committee hearing was unfair and was based on uncorroborated, false, and fabricated information from confidential sources. (Doc. 17 at 16). Plaintiff alleged that Defendants Schoenbeck and Hart violated his rights by holding an inadequate disciplinary hearing. Plaintiff seeks declaratory judgment, injunctive relief, reversing the outcome of his disciplinary proceedings and expunging them from his records, and punitive and nominal damages.

**Plaintiff's Motion to Appoint Counsel (Doc. 67)**

Plaintiff filed his fourth motion seeking recruitment of counsel. (*See* Docs. 2, 42, 48, & 67). When presented with a request to appoint counsel, the Court must make the following inquiries: (1) has the indigent plaintiff made a reasonable attempt to obtain counsel or effectively been precluded from doing so, and (2) given the difficulty of the case, does the plaintiff appear competent to litigate it himself. *Pruitt v. Mote*, 503 F.3d 647, 654-55 (7th Cir. 2007).

In his prior motions, Plaintiff had attached correspondence to legal aid services demonstrating reasonable attempts to obtain counsel on his own. (Doc. 48, pp. 3-9). However, Plaintiff has not established that the difficulty of this case exceeds his ability to litigate it pro se. Plaintiff alleges he is unable to represent himself due to the complexity of the legal issues involved in this dispute, his limited access to legal resources, and his lack of legal knowledge. (Doc. 67). However, these circumstances are not unique to Plaintiff and do not necessarily warrant recruitment of counsel. Specifically, Plaintiff is now only proceeding on a single Fourteenth Amendment Due Process claim against Defendants Schoenbeck and Hart for Plaintiff's disciplinary proceedings. This is a relatively straightforward claim that does not raise particularly complex legal issues or require extensive discovery.

Plaintiff is able to read, write, and understand the English language. (Doc. 2). He has received some college education. (*Id.*). His filings with the Court demonstrate his ability to construct coherent sentences and convey information to the Court (*see, e.g.*, Doc. 17). Further, he has successfully engaged in discovery, including requests for admission of facts and motions to compel written discovery. Plaintiff claims that his transfer to a different facility undermines his ability to investigate this case, including identifying witnesses, reports, and statements. However, Plaintiff does not explain why he cannot obtain this information through the regular course of discovery. Based on the record before it, the Court finds that the complexities of this case do not exceed his ability to prosecute it pro se. Accordingly, Plaintiff's Motion to Appoint Counsel (Doc. 67) is **DENIED**.

**Defendants' Motion for Summary Judgment (Doc. 71)**

Defendants filed a Motion for Summary Judgment, which includes a statement of Undisputed Material Facts in accordance with Local Rule 56.1. SDIL-LR 56.1(a). (Doc. 71). However, the entirety of Defendants' Statement of Undisputed Material Facts cites solely to Defendants' First Set of Requested Admissions to Plaintiff. (Doc. 71, pp. 2-3). Defendants state in a footnote that they served the requests for admissions to Plaintiff on February 4, 2025, but Plaintiff failed to respond. (Doc. 71, p. 2). They argue that due to Plaintiff's failure to respond, all factual allegations should be deemed admitted. (*Id.*).

Under Federal Rule of Civil Procedure 36(a)(3), a matter in a request for admission is deemed admitted unless the party to whom the request is directed serves a written answer or objection within 30 days after being served. Fed. R. Civ. P. 36(a)(3). Yet, the court has discretion under Rule 36 to shorten or extend a party's deadline to respond to a request for admission. (*Id.*). Further, the Seventh Circuit has long recognized that pro se litigants must be afforded "leniency .

. . on procedural matters." *Otis v. Demarasse*, 886 F.3d 639, 644 (7th Cir. 2018) (quoting *Lovelace v. Dall*, 820 F.2d 223, 228 (7th Cir. 1987)).

The Court finds that Defendants have not established Plaintiff's failure to respond to the request for admission. First, they merely state so in a footnote of their motion for summary judgment. They have not provided an affidavit to that effect. More importantly, Defendants did not move to have the factual allegations in their requests for admission deemed admitted. Plaintiff has actively participated in this case, including discovery. His failure to respond to Defendants' requests for admission may have been caused by circumstances outside his control, such as the non-receipt of the documents. Defendants do not represent that they made any attempt to follow up with Plaintiff regarding his failure to respond. Based on the information before it, the Court does not deem the factual allegations contained in Defendants' request for admission admitted. Because Defendants' factual allegations in their motion for summary judgment are not properly supported, the motion is **DENIED**. However, due to the ongoing discovery dispute between the parties, the Court deems it appropriate to extend the discovery and dispositive motions deadline. Defendants are granted leave to renew their Motion for Summary Judgment, provided that the renewed motion is supported by proper citation to the admissible record. If Defendants intend to rely on the allegations contained in their request for admission to Plaintiff, they must first move for those allegations to be deemed admitted.

**Motion for Order Compelling Discovery (Doc. 65)**

Plaintiff moved under Federal Rule of Civil Procedure 37 to compel Defendant Hart to respond to Plaintiff's First Set of Interrogatories. (Doc. 65). Plaintiff argues that Defendant Hart's responses to Interrogatories ##9, 10, 11, 13, and 15 were evasive. (*Id.*). Defendant Hart filed a response opposing the motion (Doc. 66), to which Plaintiff replied (Doc. 68).

Under Federal Rules of Civil Procedure Rule 26(b)(1), the parties "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense," as long as discovery is proportionate to the needs of the case. Fed. R. Civ. P. 26(b)(1). Evidence is relevant when "it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." Fed. R. Evid. 401. Federal Rule of Civil Procedure 37 allows a motion to compel when another party provides an insufficient or evasive response to a discovery request. Fed. R. Civ. P. 37(a)).

Interrogatory #9

In Interrogatory #9, Plaintiff asks Defendant Hart to explain in details "whether . . . the . . . Adjustment Committee . . . substantiated that the two confidential source[s] . . . did not violate D.R. 504.303 and g[a]ve false information . . . ." (Doc. 65, p. 17). Subject to a relevancy objection as to disciplinary proceedings for other individuals, Defendant Hart cited to the Adjustment Committee Final Summary Report and further stated that the disciplinary decision was made based on the written report. (*Id.*). Plaintiff argues that this response is evasive because it fails to clarify the steps the Advisory Committee took to confirm the reliability of the informants. (Docs. 65, pp. 5-6; Doc. 68, pp. 1-3). Hart counters that Plaintiff impermissibly seeks "the confidential sources referenced in the disciplinary ticket." (Doc. 66, pp. 1-2.).

First, Plaintiff is correct that this interrogatory asks for the Advisory Committee's steps to confirm the reliability of the confidential informants, but it also impermissibly seeks the identity of the informants. It is well established that due process does not require that prisoners be informed of the identity of confidential informants. *See Mendoza v. Miller,* 779 F. 2d 1287, 1294 (7th Cir. 1985). "A prison disciplinary board may rely on information from a confidential informant, but to

satisfy due process, the board must first find the informant reliable." *Ashby v. Davis,* 82 F. App'x 467, 471 (7th Cir. 2003) (citing *Whitford,* 63 F.3d at 535). Reliability can be established based on:

> (1) the oath of the investigating officer as to the truth of his report containing confidential information and his appearance before the disciplinary committee; (2) corroborating testimony; (3) a statement on the record that the chairman of the disciplinary committee that he had firsthand knowledge of the sources of information and considered them reliable on the basis of their past record of reliability; or (4) *in camera* review of material documenting the investigator's assessment of the credibility of the confidential informant.

*Mendoza v. Miller,* 779 F. 2d 1287, 1293 (7th Cir. 1985). Further, due process "does not require prison disciplinary committees to state specifically on a public record the factual basis for its finding as to the reliability of a confidential informant." *Id.* at 1295. If they chose not to explain the grounds of the confidential informants' reliability at the hearing, the prison officials may still "satisfy the inmate's right to procedural due process by documenting the reliability of the informant in a confidential report and submitting that report to the court for *in camera* review." *Id.* at 1294-95.

Here, Defendant Hart responded to Interrogatory #9, directing Plaintiff to the Adjustment Committee Final Summary Report and further reciting the following excerpt from it: "Committee finds inmate guilty based on information provided and accepts the written report to be a factual account of the incident . . . ." (Doc. 65, p. 17, 110). The written report, which states that the confidential informants were deemed reliable "due to the consistency of their statements," does not appear to have been made under oath. (Doc. 65, pp. 108-09). Further, the Adjustment Committee Final Summary Report shows that no witnesses were called, and the chairman of the disciplinary committee made no reference to having firsthand knowledge of the sources of information to consider them reliable. (Doc. 65, pp. 110-11). However, the cited excerpt of the Final Summary Report stating that Plaintiff was found guilty "based on information provided" is

ambiguous. It may be construed to mean that the Adjustment Committee relied on information not included in the Final Summary Report to determine the reliability of the confidential informant. But it may also be construed to mean that the Adjustment Committee merely considered the fact on the record. Because of this ambiguity, the Court finds that Defendant Hart's answer is evasive and must be clarified. To be clear, the Court does not say that Defendants shall share any out-of-the-record information on which the Adjustment Committee potentially relied to determine the reliability of the confidential informants. But Defendants shall clarify whether the Adjustment Committee relied on such out-of-the-record information or not.

   As a side matter, the Court further notes that it is unclear if Plaintiff was entitled to the aforementioned procedural safeguards in this case. Disciplinary proceedings subject to formal due process requires the following procedural safeguards: a) "advance written notice of the claimed violation" so that a prisoner can "marshal the facts in his defense and [ ] clarify what the charges are," (b) the ability to call witnesses and present documentary evidence "when [doing] so will not be unduly hazardous to institutional safety or correctional goals," (c) an impartial decisionmaker, and (d) "a written statement of the factfinders as to the evidence relied upon and the reasons for the disciplinary action taken. *Scruggs v. Jordan*, 485 F.3d 934, 939 (7th Cir. 2007), *quoting Rasheed–Bey v. Duckworth*, 969 F.2d 357, 361 (7th Cir. 1992). "Challenges to the sufficiency of the evidence are governed by the 'some evidence' standard." *Boyd v. Warden*, 2023 WL 130534, at *2 (S.D.Ind.Jan. 9, 2023), *quoting Ellison v. Zatecky*, 820 F.3d 271, 274 (7th Cir. 2016). Under that standard, "a hearing officer's decision need only rest on 'some evidence' logically supporting it and demonstrating that the result is not arbitrary." *Ellison*, 820 F.3d at 274 (7th Cir. 2016); *see Eichwedel v. Chandler*, 696 F.3d 660, 675 (7th Cir. 2012) ("[t]he some evidence standard ... is satisfied if there is any evidence in the record that could support the conclusion reached by the

disciplinary board."). In addition, "[w]hen confidential information is the basis for a prison disciplinary decision, there must be some indication of the reliability of the confidential sources." *Gutierrez v. Baldwin*, 2022 WL 18027527, at *6 (S.D.Ill. Dec, 30, 2022), *citing Mendoza v. Miller*, 779 F.2d 1287, 1293 (7th Cir. 1985).

However, the Seventh Circuit recently clarified that, unlike disciplinary proceedings that result in loss of good time or lengthen a prisoner's sentence, those resulting in segregation require only "informal, nonadversarial due process." *Adams v. Reagle*, 91 F.4th 880, 895 (7th Cir. 2024) (quoting marks omitted *Westefer v. Neal*, 682 F.3d 679, 681–82 (7th Cir. 2012)). Informal due process requirements are satisfied when an inmate is provided with the following: (1) 'notice of the reasons for the inmate's placement' in segregation and (2) 'an opportunity to present his views,' for instance in a written statement or at a hearing." *Id.* The decisionmaker must also remain impartial. *Id.* at 896. Informal due process, however, does not include the right to call witnesses or review video evidence. *Id.* at 895-96.

Here, Plaintiff does not allege that the disciplinary proceeding at issue resulted in loss of good time credit or otherwise extended his sentence. Rather, the liberty interests at issue are his placement in segregation for six months and his labeling as a circuit rider.[3] Without making a final determination on the issue, Plaintiff's allegations are more akin to a claim subject to informal due process. *See Adams*,91 F.4th at 965–66 ("informal, nonadversarial due process" standard is the

---

[3] Plaintiff alleges that he spent 45 days at Illinois River in solitary confinement because he was labeled as a "circuit rider" and an "extreme security risk." (Doc. 20, p. 5). During that time, he had virtually no human contact, he was not allowed to recreate outside, and he was escorted to appointments in elevated restraints. The restraints caused wrist and hand pain, and he was treated with pain medication on multiple occasions. He alleges "the 'circuit rider' status demanded that the administration and staff at Illinois River Corr. Ctr. couldn't make any decisions regarding Plaintiff unless approved by IDOC's executive administrators (directors)." (*Id.*).

correct one to apply [when the inmate] did not face disciplinary action that could affect the length of his sentence); *Ealy v. Watson*, 109 F.4th 958, 967 (7th Cir. 2024) (discussing the different procedural safeguards required under formal and informal due process). However, Defendants have not raised this issue in their response, and the extent of corroboration required for confidential information in that setting has not been fully briefed.

Accordingly, based on the record before it, the Court finds that procedural steps taken to confirm the reliability of the confidential informants are relevant to Plaintiff's due process claims, and it is the crux of Plaintiff's Interrogatory #9. Because the cited record in Defendant's response is ambiguous as to whether the Adjustment Committee considered information out of the record to confirm the reliability of the confidential informants, Defendant Hart shall supplement his answer to Interrogatory #9 to clarify so.

Interrogatory #10

Plaintiff's Interrogatory #10 asks Defendant to explain how the Adjustment Committee "noted and conducted" the hearing without Plaintiff's in-person appearance. (Doc. 65, p. 18). Citing the Adjustment Committee Final Summary Report, Defendant Hart responded that "offender refused to appear before the adjustment committee to present a defense on his behalf" and "Committee [found] inmate guilty based on information provided and accept[ed] the written report to be a factual account of the incident and [] satisfied the violations occurred as reported." (*Id.*). In his motion, Plaintiff questioned the validity of Defendant's response and cited an Illinois Administrative Code section about Adjustment Committee Hearing Procedures. (*Id.*, pp. 7–8). He argues that his disciplinary record did not disclose the evidence relied upon or whether it was assessed for reliability. *Id.* However, as Defendant correctly points out, this was not what the

request asked for. Because Defendant's response to Interrogatory #10 was not evasive or incomplete. Accordingly, Plaintiff's motion to compel as to Interrogatory #10 is **DENIED**.

Interrogatory #11

In Interrogatory #11, Plaintiff asks Defendant to "state yes or no, whether Defendant has produced to Plaintiff in Discovery all notes, papers, documents, records" that the Adjustment Committee relied upon in finding Plaintiff guilty, and if not, to state the reasons for the non-disclosure. (Doc. 65, p. 18). Defendant responded, directing Plaintiff to the Committee's Final Summary Report. (*Id.*). Plaintiff argues that this response is evasive. Defendant counters that Interrogatory #11 is rhetorical because it only attempts to make an argument that Defendant did not produce all the documents related to his disciplinary hearing. The Court disagrees with Defendant. Interrogatory #11 asks whether all "notes, papers, documents, records" that the Committee relied upon in reaching its decision on July 30, 2020, have been produced. Defendant cites documents produced in discovery, but it is unclear whether those documents were produced through Defendants' initial disclosures or in response to a specific request for production of documents. In any case, these were documents in Defendant's custody, possession, and control at the time of discovery. Interrogatory #11 is broader in that it possibly encompasses documents that were not in Defendant's custody and control at the time of discovery but on which the Committee relied in its determination. Accordingly, Defendant shall confirm whether, based on his knowledge and belief, "he has produced to Plaintiff in Discovery all notes, papers, documents, records" that the Adjustment Committee relied upon in finding Plaintiff guilty, and if not, to state the grounds for the non-disclosure. (Doc. 65, p. 18).

Interrogatory #13

Interrogatory #13 asks Defendant to identify "who appeared in person . . . as witnesses against Plaintiff on 7/30/[20]20 . . ." (Doc. 65, p. 19). Citing to the Committee's Final Summary Report, Defendant answered that "witness[es] were not called due [to] the fact that proper identification were not provided and the Statement is irrelevant or cumulative." (*Id.*). Plaintiff argues the answer is evasive because it only refers to the witnesses Plaintiff requested for the hearing. The Court disagrees. Defendant clearly stated that no witnesses were called at the hearing. Defendant further verified that his answers to Plaintiff's interrogatories were true, correct, and complete to the best of his knowledge and belief. The Court understands Defendant's answer to mean what it says: no witnesses were called at the hearing. Because Defendant's response is not evasive, Plaintiff's motion to compel on that ground is **DENIED**.

Interrogatory #15

Interrogatory #15 asks Defendant to identify the person who "completed the Refusal form." (Doc. 65, p. 20). The Adjustment Committee Final Summary Report included the Refusal Form, which bore the staff member's signature. (*Id.* at 103). In response, Defendant produced the 7AM to 3PM roster for July 30, 2020, to assist Plaintiff in identifying the full name of the staff member who signed the form. (*Id.* at 20 & 23–64). The roster contains the location where each staff member was posted. Defendant argues that Plaintiff can easily identify which staff member he interacted with on July 30, 2020, based on where he was housed. He further argues that he does not have independent recollection of who handed him the Refusal Form, and that he cannot further assist in verifying the individual who signed it because he has since resigned from the IDOC. Plaintiff counters that he cannot identify the staff member based on the provided roster because the signature on the Refusal From is illegible and does not contain a badge/and or identification

number. He further argues, consistently with his allegations in the Complaint, that he was never offered or refused to sign a refusal form, and that in any case, he was placed in a cell without a working light and officers did not have their tags on display.

Federal Rule of Civil Procedure 33(d) allows a party to produce business records "if the burden of deriving or ascertaining the answer will be substantially the same for either party." Fed. R. Civ. P. 33(d). Given Defendant's resignation from the IDOC and lack of independent recollection about the identity of the officer at issue, the Court finds Defendant has sufficiently established that the burden for him to identify the name of the officer who served Plaintiff with the Refusal Form is the same, if not greater, than Plaintiff's respective burden. Accordingly, Plaintiff's motion to compel as to Interrogatory #15 is **DENIED**.

**Motion for Order Compelling Discovery (Doc. 64)**

Plaintiff further filed a motion to compel Defendants' supplemental response to his Request for Production of Documents. (Doc. 64). Plaintiff argues that Defendants partially refused production of documents, raising several objections. Plaintiff specifically takes issue with the objections raised in Requests for Production ##1-5 and 8. He further claims that he attempted to resolve this matter without the Court's intervention but never received a response from defense counsel. Plaintiff's motion to compel Defendant's supplemental production of documents was filed the same day as Plaintiff's motion to compel Defendant Hart's answer to his First Set of Interrogatories. (Docs. 64 & 65). Defendants, who have actively and diligently participated in this case, timely responded to the latter but failed to respond to the former. Accordingly, the Court finds it appropriate to allow Defendants an extension of time up to February 4, 2026, to respond to Plaintiff's Motion to Compel (Doc. 64). Absent extraordinary circumstances, no further extensions of time will be granted.

**Conclusion**

For the foregoing reasons, Plaintiff's Motion for Order Compelling Discovery (Doc. 65) is **GRANTED in part and DENIED in part**. Defendant Hart shall provide his supplemental responses in accordance with this order **by February 18, 2026**. Plaintiff's Motion to Appoint Counsel (Doc. 67) and Defendants' Motion for Summary Judgment (Doc. 71) are **DENIED**. Defendants are granted an extension of time up to **February 5, 2026**, to respond to Plaintiff's Motion to Compel (Doc. 64). Absent extraordinary circumstances, no further extensions of time will be granted.

The current discovery and dispositive motions deadlines, as well as the trial setting, are **VACATED** and will be reset in a separate order.

**IT IS SO ORDERED.**

**DATED: January 21, 2026**

*s/ Reona J. Daly*
**Hon. Reona J. Daly**
**United States Magistrate Judge**