IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| WILLIE WILLIAMS, B63167, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 22-cv-756-RJD |
| | ) | |
| JOSHUA SCHOENBECK and JASON HART, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER**

**DALY, Magistrate Judge:**

Plaintiff Willie Willliams, an inmate within the Illinois Department of Corrections ("IDOC) who is currently incarcerated at Danville Correctional Center (Doc. 26) brought this action pursuant to 42 U.S.C. §1983, alleging Defendants violated his Eighth and Fourteenth Amendment rights of the U.S. Constitution. Regarding his Fourteenth Amendment claim, Williams alleged that several defendants deprived him of due process because he was unable to attend the disciplinary hearing that resulted in his segregation. Williams also alleged an Eighth Amendment violation based on conditions of confinement prior to his placement in segregation, and also alleged a deliberate indifference claim for his conditions in solitary or segregated confinement based on his status as a "circuit rider."

After the Court conducted a threshold review pursuant to 42 USC §1915A and ruled on the issue of administrative remedy exhaustion, Plaintiff's case proceeds on the following claim:

**Count 2: Fourteenth Amendment Due Process Claim against Defendants Schoenbeck and Hart for Plaintiff's disciplinary proceedings.**

This matter now comes before the Court on Defendants' Motion for Summary Judgment,

filed on June 29, 2026 (Doc. 86). Plaintiff filed a Response on July 28, 2026 (Doc. 88). Defendants did not reply. For the reasons explained below, the Motion for Summary Judgment (Doc. 86) is **GRANTED**.

**Evidence in the Record**

Plaintiff resided at Menard Correctional Center ("Menard") in July 2020 (Doc. 17). According to Plaintiff's Amended Complaint, on July 23, 2020, he was removed from general population by two unknown officers and placed into segregation (*Id.* at 8). On July 27, 2020, Menard's internal investigation found Plaintiff to be an "institutional coordinator" for the Gangster Disciples and a disciplinary report was issued to him on the same day for Security Threat Group Leadership Activity (Doc. 86, p. 2, ¶ 1). At his deposition, Plaintiff testified that he received this report from Officer Gaetz (Doc. 86-4, p. 9, ¶¶ 2–5). The report stated that two confidential sources identified Plaintiff as the highest-ranking leader of the Gangster Disciples at Menard (Doc. 17, p. 12, ¶ 40). It also said that Plaintiff had a right to appear and present a written or oral statement or explanation concerning the charges, and that he could also present any relevant physical materials like records or documents (Doc. 86, p. 2, ¶ 2). Plaintiff would also be permitted to ask that witnesses be interviewed and be allowed to testify during the hearing (*Id.* at ¶ 3). Plaintiff did not sign this report (*Id.* at ¶ 4).

Plaintiff informed the officer who served the disciplinary report that he intended to present witnesses, and Plaintiff stated the officer recorded as such in the original copy of the report (Doc. 17, p. 12, ¶ 40). Plaintiff claimed these witnesses could testify that he was retired from gang membership (*Id.* at 13). The disciplinary report lists two witnesses that could testify that Plaintiff was a retired and non-active member (*Id.* at 40). On July 30, 2020, the Adjustment Committee held the hearing (Doc. 86, p. 2, ¶ 5). Defendants Schoenbeck and Hart presided at the hearing

(*Id.*). Plaintiff did not appear for this hearing, and a Hearing Refusal Form was given to the Adjustment Committee (*Id.* at p. 3, ¶ 6).

On July 30, 2020, an officer came to Plaintiff's cell and told him to get ready for the Adjustment Committee (Doc. 17, p. 13, ¶ 41). The officer who came to get Plaintiff attempted to open the door, but the lock would not unlock (*Id.*). At his deposition, Plaintiff stated he did not remember who tried to open the door for him (Doc. 86-4, p. 12, ¶¶ 3–17). The officer left and returned a few minutes later with a locksmith who repaired the lock (Doc. 17, p. 13, ¶ 41). The officer left with the locksmith and came back soon after, informing Plaintiff to pack his belongings because he was being moved (*Id.*). Plaintiff asked whether he was going to the Adjustment Committee before leaving, and the officer stated he did not know anything about that, and that maybe the ticket would be heard at the next facility (*Id.* at ¶ 42). Plaintiff did not attend the hearing and was transferred to the Illinois River Correctional Center ("Illinois River") Special Restrictive Housing Unit (*Id.* at pp. 13–14).

On August 13, 2020, Plaintiff received a copy of the Final Summary Report from the Adjustment Committee which stated the disciplinary actions being taken and the basis for these actions (Doc. 86, p. 3, ¶ 7). The Adjustment Committee based their actions on the information provided by two confidential informants (Doc. 86-3, p. 5). Plaintiff was given six months of "C grade" (limitations on phone call, commissary, and other privileges), six months segregation, six months commissary restrictions, and six months contact visits restriction (Doc. 86, p. 3, ¶ 8). Plaintiff was ultimately only housed in segregation for approximately four months (*Id.* at ¶ 9) but served the entirety of the six-month C-grade privilege restriction (Doc. 86-4, pp. 15–16).

Plaintiff stated that no other inmates were housed in the Illinois River special restrictive housing unit (*Id.* at pp. 14–15). Plaintiff was housed alone and that inmates showered alone, did

not get to use the telephone, and were allowed to go to the yard, but only by themselves (*Id.*). For fourteen days, Plaintiff was also not permitted segregation property items because his property was placed under quarantine (Doc. 17, p. 14, ¶ 42). Staff gave Plaintiff state-issued hygienic materials, but Plaintiff did not have a change of underwear, socks, or t-shirt, any reading/writing materials, or legal paperwork (*Id.*). Plaintiff stated he spent forty-five days in solitary confinement at Illinois River because he was labeled as a "circuit rider" and an "extreme security risk" (*Id.* at ¶ 43). During that time, Plaintiff stated he had virtually no human contact, was not allowed to recreate outside, and was escorted to appointments in elevated restraints (*Id.*). These restraints caused him wrist and hand pain, and he was treated with pain medication on multiple occasions (*Id.* at ¶ 44).

After forty-five days in solitary confinement, Plaintiff was moved to another wing that housed long-term segregation offenders, the majority of whom struggled with mental health issues (*Id.* at p. 15, ¶ 45). The other inmates would continuously yell, bang on doors, flood cells, attempt suicide, play with human excrement, and cause officers to have to spray mace (*Id.*). Plaintiff was often unable to sleep and needed to clean the toilet water flowing into his cell from floods (*Id.*). Because of this, Plaintiff used the volume of the television to try to drown out the noise, suffered bad headaches from the volume, and would often vomit from the smell of feces and mace (*Id.*).

## Summary Judgment Standard

Summary judgment is appropriate only if the moving party can demonstrate "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Ruffin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005). The moving party bears the initial burden of demonstrating the lack of any genuine issue of material

fact. *Celotex*, 477 U.S. at 323. Once a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Estate of Simpson v. Gorbett*, 863 F.3d 740, 745 (7th Cir. 2017) (quoting *Anderson*, 477 U.S. at 248). When ruling on a motion for summary judgment, "[t]he court should neither look the other way to ignore genuine issues of material fact, nor strain to find material fact issues where there are none." *Simpkins v. DuPage Hous. Auth.*, 893 F.3d 962, 964 (7th Cir. 2018) (quoting *Sec'y of Labor, U.S. Dep't of Labor v. Lauritzen*, 835 F.2d 1529, 1534 (7th Cir. 1987)). In considering a summary judgment motion, the district court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted).

**Discussion**

The Fourteenth Amendment prohibits the state from depriving persons (including prisoners) of "life, liberty, or property, without due process of law." *Scruggs v. Jordan*, 485 F.3d 934, 938 (7th Cir. 2007) (citing U.S. CONST. AMEND. XIV §1). Of course, "prison officials must necessarily restrict the liberty of those they house." *Id*. (citing *Wolff v. McDonnell*, 418 U.S. 539, 555–56 (1974)). To prevail on a due process claim, an inmate must establish that: 1) he has a liberty or property interest that the state has interfered with; and 2) the procedures he was afforded upon that deprivation were constitutionally deficient. *Rowe v. DeBruyn*, 17 F.3d 1047, 1053 (7th Cir. 1994) (citing *Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989)). More recently, the 7th Circuit in *Torres* held that to prevail on a due process claim, an inmate must show:

1) deprivation by state action of a protected interest in life, liberty, or property; and 2) inadequate state process. 155 F.4th 952, 956 (7th Cir. 2025).

Assuming a protected liberty interest, the Supreme Court in *Wolff* held that inmates in disciplinary proceedings are entitled to: 1) advance (at least 24 hours before hearing) written notice of the claimed violation; 2) the opportunity to be heard before an impartial decision maker; 3) the opportunity to call witnesses and present documentary evidence (when consistent with institutional safety); and 4) a written statement by the fact-finder of the evidence relied on and the reasons for the disciplinary action. 418 U.S. at 563–67 (1974)). Since the decision in *Wolff*, the procedural due process approach has been refined, because the requirements imposed by the Due Process Clause are “flexible and variable dependent upon the particular situation being examined." *Hewitt v. Helms*, 459 U.S. 460, 472 (1983).

Any required prison procedures "must balance the inmate's interest in avoiding loss . . . against the needs of the prison, and some amount of flexibility and accommodation is required." *Adams v. Reagle*, 91 F.4th 880, 889 (7th Cir. 2024) (quoting *Wolff*, 418 U.S. at 566). The "[r]ules of procedure may be shaped by consideration of the risks of error and should also be shaped by the consequences which will follow their adoption." *Id.* (quoting *Wolff*, 418 U.S. at 567). Significantly, the *Adams* Court found that an inmate who is facing transfer to disciplinary segregation is entitled instead only to informal, due process, which gives prison administrators substantial discretion and flexibility. 91 F.4th at 886. Informal due process is met when an inmate is provided: 1) notice of the reasons for placement in segregation; 2) an opportunity to present his views, like in a written statement or at a hearing; and 3) an impartial decisionmaker. *Torres*, 155 F.4th at 959 (citing *Adams*, 91 F.4th at 895).

Defendants argue that Plaintiff was afforded sufficient due process because Plaintiff did

not have a liberty interest which was interfered with and because the disciplinary hearing followed necessary due process procedures. Defendants also argue they are entitled to qualified immunity. For the reasons explained below, Plaintiff's due process rights were not violated, and even assuming they were, Defendants are protected by qualified immunity.

**Deprivation of a Protected Interest**

An inmate's time in segregation may invoke the Fourteenth Amendment's procedural protections if it constitutes "an atypical and significant hardship when compared to the ordinary incidents of prison life." *Townsend v. Cooper*, 759 F.3d 678, 685–86 (7th Cir. 2014). For example, the plaintiff in *Townsend* "easily met this standard" by describing how he was denied clothing, bedding, or a mattress for weeks and months at a time. *Id*. at 683. This is a factual inquiry that depends on the "combined import" of the duration and conditions of the segregation. *Hardaway v. Meyerhoff*, 734 F.3d 740, 743 (7th Cir. 2013) (quotations omitted).

Avoiding segregation can be a protected liberty interest, but the facts matter. *Lisle v. Welborn*, 933 F.3d 705, 720–21 (7th Cir. 2019) (citations omitted). Absent exceptionally harsh conditions, relatively short terms of segregation will rarely amount to a deprivation of an inmate's liberty right. *Basemore v. Brookman*, 16-CV-562-SMY-RJD, 2018 WL 1366587, at *2 (S.D. Ill. Mar. 16, 2018) (citing *Marion v. Columbia Correction Inst.*, 559 F.3d 693, 697–98 (7th Cir. 2009) (citations omitted); *see also Brand v. Toennies*, 23-1723, 2024 WL 175948, at *1 (7th Cir. Jan. 17, 2024) (two months' C-grade status, one month segregation, and a disciplinary transfer did not raise due process concerns under governing case law); *Wilkinson v. Austin*, 545 U.S. 209, 221–24 (2005) (liberty interest in avoiding only those transfers that impose atypical or significant hardships). A liberty interest may arise "if the length of segregated confinement is substantial and the record reveals that the conditions of confinement are unusually harsh." *Marion*, 559 F.3d at 697–98.

Defendants contend that because Plaintiff has not brought any claim about the conditions of his confinement in segregation, there is no due process interest. While Plaintiff does not contest the segregation conditions in his Response to the Motion for Summary Judgment, Plaintiff has done so in his Amended Complaint, and as such the Court will discuss whether his conditions in segregation were so inferior such that the Fourteenth Amendment is implicated.

*Segregation stay at Illinois River*

In order to establish a liberty interest, inmates must show that their punishment constituted a dramatic departure from the basic conditions of prison life to present an atypical and significant hardship in order to establish a liberty interest. *Sandin v. Conner*, 515 U.S. 472, 486 (1995). If the disciplinary measures do not substantially worsen the conditions of confinement, then there is no deprivation of a protected liberty interest. *Miller v. Dobier*, 634 F.3d 412, 414–15 (7th Cir. 2011). Some cases in which constitutional interests were implicated involved a cell infested with cockroaches that crawled over the inmate's body (*see Antonelli v. Sheahan*, 81 F.3d 1422, 1431 (7th Cir. 1996)), a cell with mold and fiberglass in the ventilation ducts and evidence of severe nosebleeds and respiratory problems (*see Board v. Farnham*, 394 F.3d 469, 486 (7th Cir. 2005)), and a cell in which the inmate was forced to live in filth, leaking and inadequate plumbing, roaches, rodents, the constant smell of human waste, poor lighting, inadequate heating, dirty bedding, no toilet paper, rusted out toilets, broken windows, and drinking water containing small black worms that eventually turned into small black flies (*see Jackson v. Duckworth*, 955 F.2d 21, 22 (7th Cir. 1992)).

Under the Due Process Clause, a short-term deprivation is less serious for Eighth Amendment purposes than a long-term one. *Tesch v. County of Green Lake*, 157 F.3d 465, 476 (7th Cir. 1998). Short-term suffering can be sufficient in certain circumstances. *See Hicks v.*

*Irvin*, 2012 U.S. Dist. LEXIS 132582, at *22 (N.D. Ill. Sep. 17, 2012) (inmate being forced to live without a recommended amount of water, within feet of a feces-filled toilet, and with bugs in his cell, for anywhere from one to six days was enough to implicate due process). Yet generally, stays that are less than six months are not sufficient to invoke due process. *See, e.g.*, *Whitford v. Boglino*, 63 F.3d 527, 533 (7th Cir. 1995) (six-month segregation was not an extreme term). Additionally, prisoners do not have a liberty interest in placement at a certain prison or necessarily a liberty interest in avoiding the circuit rider program. *See id.* at 532–33 (a transfer to a maximum-security prison does not invoke due process); *Armstrong v. Lane*, 771 F.Supp. 943, 947–51 (C.D. Ill. Aug. 16, 1991) (discussing the particulars of the circuit rider program and finding that the conditions identified do not support a constitutional challenge).

At Illinois River, Plaintiff spent forty-five days in solitary confinement and the remainder of the four months in long-term segregation with other inmates. During his time there, Plaintiff mainly complained about the use of elevated restraints and that he was not permitted to attend yard or out-of-cell activities with other inmates. In this case, Plaintiff has not alleged any harm caused by the denial of access to yard or other out-of-cell activities. It may be true that the chance to exercise or even just stand around, outside, in the company of other prisoners, is an inmate's principal break from segregation. *Davenport v. DeRobertis*, 844 F.2d 1310, 1314 (7th Cir. 1988). But it may be the case that Plaintiff was not allowed to exercise outside with others because of his record, and Plaintiff does not challenge that or argue that it was unreasonable for prison officials to separate him from others during recreation. *See Vasquez v. Braemer*, 2013 U.S. Dist. LEXIS 113845, at *37–38 (W.D. Wis. Aug. 13, 2013) (citing *Pearson v. Ramos*, 237 F.3d 881, 885 (7th Cir. 2001) ("[p]reventing access to the yard was a reasonable method of protecting the staff and the other prisoners from [plaintiff's] violent propensities.")). Further, Plaintiff has stated that he

was permitted to go to yard, but just not with other inmates. Without a real harm resulting from the deprivation of yard or recreation/socialization time, the notion stands that "[i]n modern prisons the denial of recreation time may deprive inmates of many desirable, entertaining diversions the lack of which would not raise a constitutional issue." *Harris*, 839 F.2d at 1236.

Additionally, as mentioned, a less than six-month segregation stay, as is here, is normally not enough to invoke due process without deprivations of other liberty interests along with it. Since Plaintiff has not identified that he suffered any physical or mental harms or that he was denied basic human needs, and because he was placed into segregation for less than six months, there are not sufficiently serious enough conditions to invoke the Fourteenth Amendment. Moreover, the officers who placed Plaintiff into the circuit rider program are no longer defendants in this case. Defendants Schoenbeck and Hart merely conducted the disciplinary proceedings. There is no evidence showing they had any oversight or control over the circuit rider program. (Doc. 71, p. 2) (stating that Defendants presided at the hearing, but that neither Defendant was involved in the issuance of the disciplinary report).[1] They cannot be held liable for any potential constitutional violations arising out of that. *Mitchell v. Kallas*, 895 F.3d 492, 498 (7th Cir. 2018) ("For a defendant to be liable under section 1983, she must be personally responsible for the alleged deprivation of the plaintiff's constitutional rights. The personal-involvement requirement is satisfied if the constitutional violation occurs at a defendant's direction or with her knowledge or consent.") (internal citations omitted).

While the conditions Plaintiff faced at Illinois River may have been more severe than those

[1] This is cited from Defendants' Undisputed Material Facts in their Motion for Summary Judgment, which continuously cites to Defendants' First Set of Request for Admissions. Plaintiff did not respond to Defendants' Request for Admissions. Therefore, under FED. R. CIV. P. 36(a)(3), all matters contained within Defendants' Request for Admission are admitted.

in the general prison population, they were not analogous to a confinement that deprives a prisoner of all human contact or sensory stimuli. *Hardaway*, 734 F.3d at 744. Even reviewing all facts in a light most favorable to the Plaintiff, he has failed to demonstrate a deprivation of rights that could be considered an "atypical and significant hardship" at his segregation stay at Illinois River. *Id.*[2]

**Inadequate State Process**

*Due Process Standard*

Since Plaintiff has not met his burden on the first step of the due process test, it is unnecessary for this Court to analyze whether there was inadequate state process. However, even if there was an implicated liberty interest, Plaintiff also fails on the second step, and summary judgment should be granted to Defendants.

An inmate facing transfer to disciplinary segregation (rather than disciplinary action affecting the length of their carceral sentence, like a reduction in good-time credit) is entitled instead only to informal, nonadversarial due process, which gives prison administrators more discretion than they had under *Wolff*. 91 F.4th at 895; *Ealy v. Watson*, 109 F.4th 958, 965 (7th Cir. 2024) (citations omitted). The requirements of informal due process are met when an inmate

[2] In his Response to the Motion for Summary Judgment, Plaintiff also cites to 730 ILCS 5/3-8-7(e)(1) through (5), arguing the state statute grants him a federally enforceable interest in not being sentenced to segregation without minimal due process. However, § 1983 addresses only violations of federal law and federally protected liberty interests, not violations of state procedures. *Heard v. McCaughtry*, 1996 U.S. Dist. LEXIS 23679, at *7 (E.D. Wis. 1996) (citing *Tavarez v. O'Malley*, 826 F.2d 671 (7th Cir. 1987)). Disciplinary measures taken against prisoners, even if they involve the taking away of an entitlement granted by a state statute or prison regulation, are not actionable as deprivations of liberty unless the measures "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Hall v. Carter*, 1996 U.S. App. LEXIS 18553, *10–11 (7th Cir. 1996) (citing *Sandin*, 515 U.S. at 484; *Anderson*, 72 F.3d at 526).

is given: 1) notice of the reasons for placement in segregation; 2) an opportunity to present his views, like in a written statement or at a hearing; and 3) an impartial decisionmaker. *Torres*, 155 F.4th at 959 (citing *Adams*, 91 F.4th at 895). Informal due process does not necessarily require a full-blown hearing. *Westefer v. Neal*, 682 F.3d 679, 685 (7th Cir. 2012) (citations omitted). Nor does informal due process necessarily require a written decision describing the reasons for an inmate's placement. *Id.* at 686 (citations omitted). This informal, nonadversarial due process standard is the correct one to apply in this case given that Plaintiff did not face disciplinary action that could affect the length of his sentence. *See Ealy*, 109 F.4th at 965–66 (citations omitted).

As required, on July 27, 2020, Plaintiff received advanced written notice of the charges against him, and on August 13, 2020, Plaintiff received a written statement of the reasons for the resulting discipline. Plaintiff objects to his inability to present witnesses and the reliability of the confidential informant evidence used by the Adjustment Committee.

*Failure to Call Witnesses*

The failure to call witnesses on behalf of an inmate facing disciplinary action may be the foundation for a due process claim. *Lloyd v. Roeckeman*, 15-CV-1021-NJR, 2015 WL 5955534, at *2–3 (S.D. Ill. Oct. 14, 2015) (citations omitted). However, giving an inmate the ability to call witnesses is not one of the listed requirements for informal due process. *See Torres*, 155 F.4th at 959 (citing *Adams*, 91 F.4th at 895). Instead, the requirement is "an opportunity to present his views." *Id.* This standard does not mean prison administrators are required to allow inmates to call witnesses at a hearing. *Adams*, 91 F.4th at 890. Even if a prison does hold a hearing, inmates do not have a constitutional right to call witnesses or to require prison officials to interview witnesses. *Id.* (citing *Adams v. Peltier*, 2021 U.S. Dist. LEXIS 52126, 2021 WL 1061223, at *7 (S.D. Ind. Mar. 19, 2021)).

With regard to the requirement that Plaintiff have the opportunity to present his views, Plaintiff asserted in the Complaint that Defendants falsified and/or aided in the falsification of the Hearing Refusal document, thus depriving Plaintiff of any potential right to appear before the Adjustment Committee and present his defense. However, Plaintiff has not put forth any evidence to support a claim of Defendants' alleged fabrication. As such, Plaintiff cannot prevail by claiming he was unable to call witnesses, as he had no entitlement to do so, and there is no evidence that Defendants were personally involved in preventing Plaintiff from appearing at the hearing.

*Reliability of Confidential Informants*

Plaintiff further asserts that Defendants deprived him of a fair and impartial hearing by relying solely upon the disciplinary report's reference to confidential sources without corroborating evidence and/or complying with the assessment requirements. Disciplinary decisions must be supported by "some evidence." *Black v. Lane*, 22 F.3d 1395, 1402 (7th Cir. 1994). Under that standard, "a hearing officer's decision need only rest on 'some evidence' logically supporting it and demonstrating that the result is not arbitrary." *Ellison v. Zatecky*, 820 F.3d 271, 274 (7th Cir. 2016). This standard, then, is satisfied if "there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Eichwedel v. Chandler*, 696 F.3d 660, 675 (7th Cir. 2012). Generally, "[w]hen confidential information is the basis for a prison disciplinary decision, there must be some indication of the reliability of the confidential sources." *Gutierrez v. Baldwin*, 2022 WL 18027527, at *6 (S.D. Ill. Dec. 30, 2022) (citing *Mendoza v. Miller*, 779 F.2d 1287, 1293 (7th Cir. 1985)).

The requirements under *Mendoza* are procedural, and they are implicated only when formal due process is required. *See Chairez v. Ottensmeier*, 2026 U.S. Dist. LEXIS 124148, at *7–8; (S.D. Ill. June 4, 2026) (discussing how informal due process does not require the full set of

procedures under *Wolff* and that the use of confidential informants in plaintiff's disciplinary proceeding did not mean he lacked notice or a chance to respond). Informal due process does not even necessarily require a written decision describing the reasons for an inmate's placement, meaning that the evidence used need not necessarily be explained either. *See id.* (the only requirements under informal due process are notice, an opportunity to present views, and an impartial decisionmaker); *see also Westefer*, 682 F.3d at 686 (stating that *Hewitt* requires, in the administrative-segregation context, only a review of the inmate's placement by the prison official who decided it, but not a right to additional layers of review or a review of the placement determination once it has been definitively made). While the confidential informants were used here to support the disciplinary decision, Plaintiff cannot show that he was entitled to a "full-blown" hearing, as required for more formal due process. *See Westefer*, 682 F.3d at 685.

In any event, prison officials are given broad discretion when balancing the inmate's due process interests against the government's interests in institutional safety and an efficient disciplinary system. *Id.* (citing *Chavis v. Rowe*, 643 F.2d 1281, 1286 (7th Cir. 1981)). The Supreme Court has recognized that prison officials have this broad discretion because prison administration is "at best an extraordinarily difficult undertaking." *Hewitt*, 459 U.S. at 467 (1983) (citing *Wolff*, 418 U.S. at 566). In determining reliability, the court's review is deferential because, "it is inherently dangerous to even attempt to determine the reliability of an informant since such effort could jeopardize lives and the willingness of informants to continue providing information." *Id.* (citing *McCollum v. Miller*, 695 F.2d 1044, 1049 (7th Cir. 1982)). It is common knowledge that information quickly travels through the prison "grapevine," and it would be no time at all before a suspected informer would be "dealt with." *Dawson v. Smith*, 719 F.2d 896, 899 (7th Cir. 1983).

**Qualified Immunity**

Finally, Defendants contend that summary judgment should be awarded in their favor because they are shielded by the doctrine of qualified immunity. To evaluate the defense of qualified immunity, the Court determines whether Defendants' conduct violated a constitutional right *and* whether that specific constitutional right was clearly established at the time of the alleged violation. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). The Court has already determined that there is no genuine issue of material fact regarding whether Defendants violated Plaintiff's Fourteenth Amendment right in Count 2.

Even if there was a genuine issue of material fact on the due process issues, Defendants would still be entitled to qualified immunity from any damages remedy because the applicable law was not clearly established at the time they ordered him into solitary confinement. *Jackson v. Anastasio*, 150 F.4th 851, 854 (7th Cir. 2025). Defendants should not be held responsible for incorrectly guessing otherwise due to the ambiguity of the parameters of the law. *Id.* at 864 (citing *Hardaway*, 734 F.3d at 745). Whether and when solitary confinement deprives a prisoner of a protected liberty interest has always been a difficult problem for the courts, so qualified immunity applies even where a prisoner's rights have been violated. *Id.* at 857 (citation omitted).

The burden is on Plaintiff to identify case law that has both articulated the right at issue and applied it to the facts similar to the ones in the present case, and he has not done so. *Id.* at 862 (citations omitted). For segregation terms measured in months, even if an inmate's segregation amounted to a deprivation of a liberty interest, it is unlikely that prison officials could be "held responsible for incorrectly guessing otherwise due to the ambiguity of the parameters of the law." *Id.* at 859 (citing *Hardaway*, 734 F.3d at 745). Plaintiff's liberty interest was not "clearly established" by the case law of this court or the Supreme Court in July 2020. *See id.* at

863. Therefore, Defendants Schoenbeck and Hart are therefore entitled to summary judgment on their qualified immunity defense.

## CONCLUSION

Defendants' Motion for Summary Judgment (Doc. 86) is **GRANTED**. Summary judgment is granted in favor of Defendants on Count 2, in favor of Defendants Schoenbeck and Hart. The Clerk of Court is directed to enter judgment accordingly at the close of the case.

**IT IS SO ORDERED.**

**DATED: October 23, 2026**

**Hon. Reona J. Daly**
**United States Magistrate Judge**